IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James P. Moody, 266364, | ) |
| | ) CIVIL ACTION NO. 9:09-1480-CMC-BM |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Willie Eagleton, Warden; Dr. Michael | ) |
| Beinor; Kimberly C. Gastin, LPN; | ) |
| Amy Smith; and Adrienn L. Fuller, in their | ) |
| individual capacities and in their official | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 15, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 16, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion



- 1 -

on January 21, 2010.

Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that he went to medical on April 22, 2009 for his "sliding scale insulin call". Plaintiff alleges that the Defendant Fuller, a nurse, checked his blood sugar and it was 168. Plaintiff alleges that this was not a high enough level to justify calling a doctor, but she called a doctor anyway for no reason. Plaintiff alleges (apparently) that this resulted in the doctor changing his insulin amount, causing him to "break . . . out". Plaintiff alleges he signed a refusal slip as to why he could not take the insulin, at which time Fuller told him that now he would get no insulin. Plaintiff alleges that he was without insulin for about five (5) days, when he was rushed to the hospital due to the discontinuation of his insulin.

Plaintiff also alleges that on May 12, 2009, after he (apparently) had a "medical run" to the Kirkland Correctional Institution[3], he was told to go to medical. Plaintiff alleges that when he got to medical, the Defendant Gaskin (a nurse) took his wheelchair "knowing that [his] foot is all swollen up . . . ." Plaintiff alleges he tried to talk to the Defendant Smith, Gaskin's supervisor, but

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3] Plaintiff is housed at the Evans Correctional Institution.



that Smith told him that she did not want to talk to him. Plaintiff alleges that he complained to a "Mrs. Freeman", asking her to "get the Warden", resulting in the Defendant Warden Eagleton telling Plaintiff to come to his office. Plaintiff alleges that he had to be helped by a friend to get to the Warden's office, where he complained that he had never been seen by a doctor. Plaintiff alleges that Eagleton told him the doctor would be back to work at 6:00 a.m. to "take care of it".

Plaintiff alleges that the following day, May 13, 2009, Gaskin came (apparently) to his cell and took his oxygen machine, leaving him in a "bad condition" because he has lung disease. Plaintiff alleges that Gaskin told him that the doctor had discontinued his oxygen, which was a lie. Plaintiff alleges that this was really in retaliation for his having filed a lawsuit against the "last doctor" [who] work here . . . ."

Plaintiff alleges that the Defendant Doctor Beinor has never seen his foot and does not even know him. Plaintiff further alleges that the Defendant Smith will not "try to correct her nurses", while the Defendant Fuller's discontinuation of his insulin was "life threatening". Plaintiff seeks monetary damage, as well as certain declaratory and/or injunctive relief. <u>See</u> <u>generally</u>, <u>Verified Complaint</u>.

In support of summary judgment, the Defendant Amy Smith has submitted an affidavit wherein she attests that she is a registered nurse at the Evans Correctional Institution, where she supervises the licensed practical nurses (LPNs) at that institution. Smith attests that she has attached to her affidavit as Exhibit A a copy of the SCDC health services medical summary reflecting medical treatment rendered to the Plaintiff. Smith has also attached to her affidavit as Exhibit B a twenty page collection of additional medical records of the Plaintiff.



Smith attests that with regard to Plaintiff's allegation that Fuller contacted an ECI physician regarding his insulin prescription on or about April 22, 2009, that Plaintiff's medical records show that Fuller contacted an ECI physician on April 29, 2009, seeking clarification of Plaintiff's insulin orders. Plaintiff's medical records further show that Plaintiff's insulin medication was then changed to Novolin Insulin 70/30 and Novolin Regular for sliding scale coverage pursuant to an order of Dr. Sadia Rafi. Plaintiff's medical records thereafter reflect that, after being informed of the change with respect to his insulin orders, Plaintiff complained about the change, refused to take new insulin medication, and that his former insulin medications were then reinstated within a matter of days. See Medical Record Encounters 1839-1847 (# 035 and # 034). Specifically, after Fuller informed Plaintiff of his new medication changes and administered four units of Novolin Regular, Plaintiff subsequently complained that these other insulins irritated his skin and signed a refusal for all insulin and Lotensin ordered by Dr. Rafi on April 29, 2009. Plaintiff's records further reflect that Plaintiff thereafter reported to the doctors clinic on or about April 30, 2009 complaining of mid-abdominal pain since the evening of April 29, 2009, and that he was then transported to the emergency room of Marlboro Park Hospital. Plaintiff was returned to the prison later that day, with the ER physician advising ECI medical personal that Plaintiff had received regular insulin at the hospital with no ill effects.

Plaintiff was a "no-show" for the diabetic line on May 1, 2009, and again for the a.m. dosage on May 2, 2009. Later in the day on May 2, 2009, Plaintiff reported to the medical department complaining of high blood sugar, and when his blood sugar was tested the reading was too high for the meter to pick up. Smith attests that, in response, Dr. Rafi was called by medical



personnel, and he issued an order that Plaintiff's recently changed insulin orders be discontinued and that his old insulin regime be reinstated. Smith attests that Plaintiff's diabetes has been successfully managed since the reinstatement of his old insulin regime, and he has essentially been compliant with the instructions of the ECI medical staff since his insulin medication was changed back to the regime he was receiving prior to April 29, 2009.

With respect to Plaintiff's complaint that a wheelchair was wrongfully taken from him on or about May 12, 2009, Smith attests that Nurse Stokes requested that Plaintiff's chart be reviewed by the Defendant Dr. Beinor regarding clarification of Plaintiff's orders to have use of a wheelchair (Encounter 1869, # 031). Plaintiff's medical records show that he had been provided with the use of a wheelchair on March 13, 2009 and was still using the wheelchair as of May 9, 2009. Dr. Beinor instructed the nursing staff to ask Plaintiff if he still needed a wheelchair, and to watch him walk if he was able to do so. Plaintiff advised the nursing staff that he was not able to walk; however, the nursing staff observed Plaintiff walking with a slight limp, and determined that he was able to walk without assistance. Plaintiff was informed that a medical order for removal of the wheelchair had been issued on May 14, 2009, following which Plaintiff was observed by the medical staff ambulating around the sick call waiting area in no distress. Smith further attests that Plaintiff's medical records show that Plaintiff's left foot revealed no redness or swelling at that time. Smith attests that Plaintiff refused to leave the medical department without a wheelchair, leading him to be escorted from the medical department by a correctional officer, during which he was able to ambulate out of the medical department in no distress.

With respect to Plaintiff's allegations relating to the removal of an oxygen machine



from his room, Smith attests that the Defendant Gaskin removed an O2 concentrator from Plaintiff's room on May 14, 2009 because the concentrator was left in the "on" position while Plaintiff was walking on the yard. See Encounter 1891, # 028. Plaintiff then went to the medical department later that same day demanding to see a physician regarding the removal of the oxygen machine from his room. The ECI nursing staff thereafter returned the O2 concentrator to Plaintiff's room in response to an order issued by Dr. Beinor. Smith attests that Plaintiff's medical records show that Plaintiff was without the use of the O2 concentrator machine for less than twenty-four hours, and that he did not sustain any injuries or aggravation of his lung disease condition during the time he was without the use of the O2 concentrator machine.

Smith attests that Plaintiff's voluminous medical records indicate that he received medical evaluation and/or treatment on virtually a daily basis, that the treatment he receives is thoroughly documented, and that Plaintiff's medical records clearly indicate that he has not suffered any injury or aggravation of his various medical conditions as a result of the decisions made by the medical staff. See generally, Smith Affidavit, with attached Exhibits.

The Defendants have also submitted an affidavit from Mary Coleman, who attests that she is Branch Chief of the Inmate Grievance Branch for the South Carolina Department of Corrections. Coleman attests that she has reviewed the grievance files maintained by her office for grievances filed by the Plaintiff, which show that Plaintiff filed a Step One Grievance (ECI-0712-09) on April 29, 2009, which is attached to her affidavit as Exhibit A. Plaintiff alleged in this grievance that he believed that his insulin medication was improperly changed. Coleman attests that Plaintiff received a response from the Defendant Eagleton and informing him of his right to submit a Step



Two Grievance form, following which Plaintiff filed a Step Two grievance on or about August 7, 2009, a copy of which is attached to Coleman's Affidavit as Exhibit B.[4] However, Coleman attests that in this Step Two grievance, Plaintiff referred to complaints he had about not being allowed to take an oxygen machine on medical runs, but did not address the change of Plaintiff's insulin prescription.[5] Plaintiff's Step Two grievance was determined to be unsubstantiated on or about September 8, 2009, and he was then advised that he had thirty days from that date to file a Notice

---

[4] This Court can take judicial notice from the numerous other prison filings in this District that the South Carolina Department of Corrections has a two step grievance process, whereby an inmate dissatisfied with the results of his Step 1 grievance can then file a Step 2 grievance via the institutional grievance coordinator. If the inmate is then dissatisfied with the results of his Step 2 grievance, he can then appeal to the South Carolina Administrative Law Court. For purpose of exhaustion of administrative remedies so as to pursue a Section 1983 claim in federal court, an inmate does not ordinarily need to pursue his administrative remedies past the Step 2 grievance decision. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007). Rather, if the prisoner is not satisfied with the response of the Step 2 SCDC official, he may then file a complaint in Federal District Court about the matters raised in his grievance. If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process and also appeal the Step 2 decision to the state ALJ Division before his remedies may be said to be exhausted. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973).

[5] A review of this grievance reveals that Plaintiff did in fact mention his problems concerning his insulin prescription, although he does reference a different grievance number. In any event, the response to the Step Two Grievance clearly deals with Plaintiff's insulin complaint. See Coleman Affidavit, Exhibit B. Further, Plaintiff has submitted a copy of another Grievance he filed June 1, 2009 (Grievance No. ECI-0930-09), in which he was complaining about his insulin change (Exhibit 3-B to Plaintiff's Memorandum in Opposition to Summary Judgment). This Grievance reflects that it was returned unprocessed because the claim was duplicative of Grievance No. ECI-0712-09.



of Appeal to the Administrative Law Court. Coleman attests that Plaintiff did not appeal to the Administrative Law Court.

Finally, Coleman attests that Plaintiff's grievance records indicate that he filed a Step One Grievance (#ECI-0850-09) on or about May 24, 2009, attached her affidavit as Exhibit C, in which Plaintiff complained that his oxygen machine was improperly moved from his cell. Although Coleman attests that there is no record of Plaintiff ever having filed any grievance relating to his being deprived of the use of a wheelchair, Plaintiff does reference his wheelchair having been taken in this grievance. A response to the Step One Grievance was prepared on or about July 6, 2009, indicating that Plaintiff's oxygen machine had been returned to him on the same day it was removed. Coleman attests that there is no indication that Plaintiff ever attempted to file a Step Two grievance form related to this grievance. See generally, Coleman Affidavit, with attached Exhibits.

Plaintiff has attached numerous exhibits to his memorandum in opposition to summary judgment, including a copy of the Defendant Smith's affidavit, copies of correspondence with the American Diabetes Association, some health services records and copies of grievance forms, and copies of selected portions of his medical record summaries. See also, n. 5, supra. Plaintiff has also submitted an affidavit wherein he attests that he is a diabetic, that he takes insulin four times a day, and that he also has a lung disease called sarcondosis, for which he is on oxygen. Plaintiff attests that the medical staff at ECI has refused him medical treatment "on many, many occasions", and that they have also taken his oxygen machine without a doctor's orders. Plaintiff attests that the Defendant Fuller has told him that she does not like him and that she would not help him in any way, and that she has even refused to give him medication on the pill line. Finally, Plaintiff attests that the Defendant Smith was informed by the Plaintiff about his insulin being cut

- 8 -



off on more than two occasions, but that Smith told him she did not want to talk to him and that she did not "have time". See generally, Plaintiff's Affidavit.

Plaintiff has also submitted an affidavit from another inmate, Johnny Gathers,[6] who attests that he is an inmate at ECI. Gathers attests that he was assigned as a "pusher" for the Plaintiff, and that he knows that Plaintiff takes insulin three to four times a day. Gathers attests that in April 2009 he pushed Plaintiff to medical for his insulin shot, and that even though Plaintiff told the Defendant Fuller that his blood sugar was in the right range so he needed "no coverage", Fuller told the Plaintiff to wait until she had consulted with a doctor. Gathers attests that after her phone call with the doctor, Fuller told Plaintiff he could go. However, later that same day, Plaintiff had to return to medical for insulin, at which time Fuller told Plaintiff that she had called a doctor to have his insulin changed. Gathers attests that after being informed of the type of insulin, Plaintiff told Fuller that he could not take that kind of insulin. Gathers attests that "they" told Plaintiff to sign a refusal slip, but that they might call a doctor.

Gathers attests that he heard Fuller tell the Plaintiff that she did not like him and to never ask her for her help of any kind. Gathers also attests that Plaintiff made several attempts to contact Smith and others about his problems, to no avail. Gathers further attests that he witnessed the Defendant Gaskin take Plaintiff's wheelchair just after he had returned from seeing a doctor in Columbia. Gathers attests that Plaintiff's foot was swollen and hurt very badly, but that Gaskin told him that she had been ordered to remove the wheelchair. Gathers also attests that Warden Eagleton came to medical, spoke with the Plaintiff and saw his swollen foot, and told Plaintiff he would

---

[6]Johnny Gathers is a frequent filer of pro se prisoner litigation in this Court.



address the matter the following day.  See generally, Gathers Affidavit.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."  Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants initially argue in their brief that the complaint should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit.  Pursuant to 42 U.S.C. § 1997(e)(a) "[n]o action shall be brought with respect to prison conditions under Section 1983 of this Title, or any other federal law ,by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Failure to exhaust is an affirmative defense.  Therefore, the Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies.  See Anderson v. XYZ



Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005)[Inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]. To meet this burden, the Defendants have submitted the affidavit of Mary Coleman, wherein Coleman attests that Plaintiff filed a Step One Grievance (# ECI-712-09) complaining about his insulin medication being improperly changed on April 29, 2009. Plaintiff did not file his Step Two Grievance relating to this claim[7] until August 7, 2009, which was after Plaintiff had filed this lawsuit.[8] Therefore, Plaintiff would not ordinarily be allowed to pursue this claim in this lawsuit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]. However, Plaintiff correctly points out in his memorandum opposing summary judgment that, even though he submitted his Step One grievance on April 29, 2009, the Warden did not respond to this grievance until August 3, 2009, over three months later. Coleman Affidavit, Exhibit A. Plaintiff argues that the Warden is supposed to respond to a Step One grievance within forty days, but that here the Warden took over three months to respond, during which time his life was in serious danger. This evidence presents a

---

[7] As previously noted, although Coleman states in her affidavit that this Step Two Grievance did not reference Plaintiff's claim relating to his insulin change, with Plaintiff instead making a complaint about his oxygen machine, a review of this Step Two Grievance reveals that Plaintiff did discuss his complaints concerning his insulin change in his Step Two Grievance. Further, the prison conceded in its response to Grievance ECI-0930-09 that ECI-0712-09 discussed Plaintiff's insulin change. See Coleman Affidavit, Exhibit B; Plaintiff's Exhibit 3-B.

[8] The filing date for Plaintiff's lawsuit is June 3, 2009. Houston v. Lack, 487 U.S. 266, 270-76 (1988)[prisoner's pleading deemed filed at moment of delivery to prison authorities for forwarding to District Court].

- 11 -



sufficient issue of material fact as to whether the Plaintiff properly attempted to exhaust his administrative remedies on his insulin claim prior to filing this lawsuit to survive summary judgment on that basis. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable].

However, with respect to Plaintiff's claim concerning the oxygen machine and his wheelchair being taken from him, the evidence shows that Plaintiff did not file a grievance concerning these claims until May 24, 2009 (# ECI-850-09),[9] and that he received a response to this Step One grievance on July 6, 2009. Hence, Plaintiff clearly filed this lawsuit *before* the grievance briefing period for this Step One grievance had even expired. See Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman, 196 F.3d at 645 [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]. Additionally, Coleman attests in her affidavit that Plaintiff never filed a Step Two grievance with respect to Grievance #ECI-850-09, which Plaintiff has not disputed in his response memorandum. See Jordan v. Miami-Dade County, 439 F.Supp.2d 1237, 1241-1242 (S.D.Fla. 2006) [Remedies not exhausted where inmate did not appeal denial]. Instead, Plaintiff argues in his brief that he was not required to exhaust his administrative remedies before proceeding to this court. See Plaintiff's Response Brief, pp. 21-22.

---

[9]Although Plaintiff mentioned his oxygen machine in his Step Two appeal of Grievance # ECI-712-09, that claim was not a part of his Step One grievance. See Coleman Affidavit, Exhibits A and B.



Plaintiff's argument is incorrect. See Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; cf. Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]. Therefore, Plaintiff's claims in his complaint concerning the loss of a wheelchair and/or loss of his oxygen machine are subject to dismissal for failure to exhaust his administrative remedies with respect to these two claims.

## II.

With respect to Plaintiff's claim concerning his insulin, which the undersigned has determined is properly before this Court, after review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment on this claim. In order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence.

The evidence before this Court includes voluminous medical records showing that Plaintiff has received continuous and ongoing treatment for his medical complaints. None of the information contained in these medical records supports Plaintiff's claims of constitutionally inadequate medical care with respect to his insulin prescription, nor do Plaintiff's own exhibits



provide support for such a claim. To the extent the copies of medical summaries Plaintiff has submitted relate to his insulin claim, they fail to show a deliberate indifference on the part of any named Defendant, as both Plaintiff's exhibits as well as the medical records provided by the Defendants show that Plaintiff received regular treatment for his diabetic condition. With respect to the specific claim regarding the changing of his insulin, the medical records reflect that this change was initially ordered by Dr. Rafi, who is not even a Defendant in this lawsuit. Further, when Plaintiff had an adverse reaction to the new insulin he was prescribed, the medical records show that Dr Rafi changed Plaintiff's insulin prescription to the old insulin regime. In the interim, Plaintiff had been taken to the hospital because of his refusal to take his insulin medication, where he received an insulin treatment with "no ill effects".

Additionally, the Defendant Smith, a registered nurse, attests in her affidavit that Plaintiff has received more than adequate medical treatment and care for his various medical conditions, including his diabetic condition, that the treatment he has received has been as a result of valid orders from an ECI physician, and that Plaintiff's medical records clearly indicate that he has not suffered any injury or aggravation of his various medical conditions as a result of these decisions. In contrast to this medical evidence, Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to his medical needs arising out of the change in his insulin or with respect to the treatment of his diabetic condition generally. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]). Rather, Plaintiff only generally alleges in his complaint that medical personnel refused to provide him the treatment he desired, while making



claims of non-treatment which are specifically refuted by the medical evidence. Cf. Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d 810,818 (4th Cir. 1995)[explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range or reasonable probability" and that ["[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)].

While Plaintiff may not agree with the extent and nature of the medical care he received with respect to this incident, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents which refute his claims. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennen, 511 U.S. 825, 837 (1994).



Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has generally been inadequate with respect to this claim. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs with respect to the change of his insulin, the standard for a constitutional claim, and therefore Plaintiff's federal § 1983 medical claim with respect to this incident should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**. With respect to Plaintiff's claim concerning his insulin regime, the defendants' motion for summary judgment should be **granted** with prejudice. With respect to Plaintiff's remaining claims concerning his wheelchair and his oxygen machine, those two claims should be **dismissed**, without prejudice, for failure of the Plaintiff to exhaust his administrative remedies.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 18, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

